

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**U.S. Department of Justice**

2012 JAN -4 P 12: 17

*United States Attorney*
*District of Maryland*
*Northern Division*

BY _____ CITY

---

*Rod J. Rosenstein*
*United States Attorney*

*Justin S. Herring*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4985*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*
*TTY/TDD: 410-962-4462*

October 13, 2011

<u>VIA EMAIL</u>
Malik Edwards
Assistant Federal Public Defender
Office of the Federal Public Defender for the District of Maryland
1100 S. Charles St.
Tower II, Suite 1100
Baltimore MD 21201

Re:   *U.S. v. Samuel Sullivan*, JFM 10 0223

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 11, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

1.     The Defendant agrees to plead guilty to Counts Two and Three of the Indictment now pending against him, which charges him with Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a), (d) & (f), and Possession and Use of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

Elements of the Offense

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a.    Armed Robbery (Count Two)

    (1)    The Defendant took, from the person or in the presence of an employee of a bank, money or property that belonged to or was in the care, custody, control, management or possession of the bank;

    (2)    The Defendant did so by force, violence and intimidation;

    (3)    The deposits of the bank were then insured by the Federal Deposit Insurance Corporation; and

    (4)    During the commission of the offense, the Defendant intentionally assaulted or put the life of another person in jeopardy by the use of a dangerous weapon.

b.    Use of a Firearm During a Crime of Violence (Count Three)

    (1)    The Defendant committed the crime of armed bank robbery as charged in Count Two of the Indictment;

    (2)    The Defendant knowingly used, carried and brandished a firearm; and

    (3)    The firearm was used, carried and brandished during and in relation to the crime of Armed Robbery charged in Count Two.

### Penalties

3.    The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Armed Robbery (Count Two)– imprisonment for twenty-five (25) years, followed by a term of supervised release of three (3) years, and a fine of $250,0000; Use of a Firearm During a Crime of Violence (Count Three)– imprisonment of life, a term of supervised release of three (3) years, and a fine of $250,0000. In addition, the Defendant must pay $200 ($100 per count) as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

---

[1]    Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

<u>Waiver of Rights</u>

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to

3

answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.      Armed Robbery (Count Two)

(1)      Pursuant to § 2B3.1(a), the base offense level is 20.

(2)      Pursuant to § 2B3.1(b)(1), the base offense level is increased by 2 levels because the property of a financial institution was taken.  (Subtotal = 22)

(3)      Pursuant to §2B3.1(b)(7), the base offense level is increased by 1 level because the loss exceeded $10,000.      (Subtotal = 23)

(4)   Pursuant to § 3B1.1(c), the base offense level is increased by 2  levels because the defendant was an organizer, leader, manager or supervisor in criminal activity. (Subtotal = 25)

(5)   Pursuant to §3C1.2, the base offense level is increased by 2 levels because the Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers. (Subtotal = 27) *25*

(6)   Pursuant to U.S.S.G. §3C1.1, there is a 2 level upward adjustment because the defendant obstructed justice. (Subtotal = 29) *27*

(7)   This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Thus, the final adjusted offense level for Count Two is 26. *24*

b.   <u>Use of a Firearm During a Crime of Violence (Count Three)</u>

Pursuant to 2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute, which is to run consecutive to any sentence imposed for Count Two. The Defendant admits that he brandished a firearm during and in relation to the Armed Robbery charged in Count Two. Thus, the minimum term of imprisonment required by statute is seven (7) years, to run consecutive to any sentence imposed for Count Two.

7.   The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.   This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9.      At the time of sentencing, this Office will recommend a reasonable sentence in light of the factors set forth in 18 U.S.C. 3553(a). At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

11.      In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.      The Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release); except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the applicable guideline range; (ii) and this Office reserves the right to appeal any term of imprisonment that is below the applicable guideline range.

c.      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

12.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify

6

a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

<u>Court Not a Party</u>

13.    The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

<u>Entire Agreement</u>

14.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

7

      If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

                   Very truly yours,

                   Rod J. Rosenstein
                   United States Attorney

              By:_____
                   Justin S. Herring
                   Assistant United States Attorney

      I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11-22-2011
_____
Date

                 Samuel Sullivan, Jr.

      I am Mr. Sullivan's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/22/11
_____
Date

                 Malik Edwards, Esq.

## ATTACHMENT A

*The Defendant stipulates and agrees that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The Defendant also stipulates and agrees that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, Samuel Sullivan Jr. ("SULLIVAN"), age 36, is a resident of Brandywine, Maryland.

On or about December 28, 2009, SULLIVAN met with his distant cousin, Andrew Hooker-Orange ("Hooker-Orange") to plan a bank robbery. The next day, Hooker-Orange stole a loaded .40 caliber Glock 35 semi-automatic handgun, with serial number CPY921US, out of his mother's house for use during the robbery.

On December 30, 2009, SULLIVAN picked up his cousin and drove to the BB&T Bank, a federally insured institution, located in Crofton, Maryland. They parked in a residential area near the bank, and Hooker-Orange gave the firearm to SULLIVAN for use during the robbery. At approximately noon that day, SULLIVAN and Hooker-Orange entered the bank, wearing ski-masks and identical clothing, and announced a robbery. SULLIVAN, brandishing his firearm, ~~then~~ *while entering bank, returned it to him*, instructed bank employees "Not to make this robbery a homicide." SULLIVAN positioned himself by the front door, while Hooker-Orange vaulted over the high-glass partition and took money from three different teller stations, totaling $10,728 in U.S. currency.

After obtaining money from the bank, SULLIVAN and his co-conspirator fled the area of the bank in SULLIVAN'S white Mercedes SUV. A witness called 911 and gave a description of the vehicle. Marked patrol units subsequently observed a vehicle matching the description, and a high speed pursuit ensued. The pursuit eventually concluded in Prince George's county, where SULLIVAN and Hooker-Orange bailed from the SUV and fled on foot.

After a foot-chase, SULLIVAN and Hooker-Orange were apprehended. A backpack containing $9,484.00 was recovered near the apprehension site, in addition to the .40 caliber Glock 35 semi-automatic handgun with serial number CPY921US. SULLIVAN also had $1,180.00 in U.S. currency on his person. The BB&T was equipped with a digital surveillance system and images of the persons committing the robbery were captured. A search warrant was executed on SULLIVAN'S Mercedes, and the clothing worn during the robbery was recovered.

SULLIVAN was interviewed, after being advised of and waiving his Miranda rights. He admitted his participation in the bank robbery, but falsely stated that he was simply the getaway driver and did not go inside the bank.

In October 2010, SULLIVAN was incarcerated in the same facility as Hooker-Orange. ~~He approached~~ Hooker-Orange ~~and persuaded him to~~ sign a letter falsely exculpated SULLIVAN by claiming that SULLIVAN knew nothing about the robbery. In January 2011, SULLIVAN also sent a copy of this false exculpatory letter to the court.

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

_11/22/11_
Date

_Samuel S____
Samuel Sullivan, Jr.

I am Mr. Sullivan's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign is an informed and voluntary one.

_11/22/11_
Date

_____
Malik Edwards, Esquire